COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Athey and Senior Judge Haley
Argued at Fredericksburg, Virginia


NINA T. DANIEL
                                                            MEMORANDUM OPINION* BY
v.      Record No. 1189-19-4                                JUDGE JAMES W. HALEY, JR.
                                                            MARCH 31, 2020
SELDEN L. DANIEL


                    FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                              William T. Newman, Jr., Judge

            John K. Cottrell (Cottrell Fletcher & Cottrell PC, on briefs), for
            appellant.

            Laura C. Dove (Mullett Dove Meacham & Bradley, PLLC, on brief),
            for appellee.


        Nina T. Daniel (wife) appeals a final order of divorce. She argues that the circuit court erred

by granting a motion *in limine*, filed by Selden L. Daniel (husband), and ordering that wife could

not present any evidence. Wife also argues that the circuit court erred by finding that husband had

traced a separate property contribution into the marital home. Wife further argues that the circuit

court erred by imputing income to her and not using husband's actual gross income for support

purposes. Lastly, wife contests the attorney's fee award of $30,360 to husband. We find no error

and affirm the decision of the circuit court.

                                        BACKGROUND

        "When reviewing a trial court's decision on appeal, we view the evidence in the light

most favorable to the prevailing party, granting it the benefit of any reasonable inferences."

Shah v. Shah, 70 Va. App. 588, 591 (2019) (quoting Congdon v. Congdon, 40 Va. App. 255, 258

───────────────

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

(2003)).  The parties married on May 1, 2004, and separated on April 22, 2015.  In July 2018, husband filed a complaint for divorce.  Wife subsequently filed, *pro se*, an answer and counterclaim, to which husband responded.  On September 7, 2018, the circuit court entered a uniform pretrial scheduling order (the scheduling order), which set a two-day trial beginning March 26, 2019.  The scheduling order also established certain deadlines, including requiring the parties to exchange witness and exhibit lists fifteen days before the trial.

The parties filed a joint stipulation regarding the admissibility of certain trial exhibits.  Husband timely filed his list of witnesses and exhibits.  Husband identified twenty witnesses, as well as numerous documents relating to real estate, the parties' incomes, banking and retirement information, personal property, custody matters, husband's separate property, and attorney's fees.  Wife did not file a list of witnesses and exhibits, nor did she file any objections to husband's list of witnesses and exhibits.

A few days after the deadline, husband contacted wife about the status of her designation of witnesses and exhibits, and she admitted that she did not file anything with the circuit court.  Husband subsequently filed a motion *in limine* and scheduled a hearing on his motion.  Husband argued that wife had disregarded the scheduling order and should be precluded from presenting any evidence at the final hearing.  Husband also filed objections to wife presenting any witnesses or exhibits at trial.

The night before the hearing on the motion *in limine*, wife faxed her list of witnesses and exhibits to husband.  At the hearing, husband argued that wife had not fully responded to discovery and had listed six people who had not been identified in discovery as possible witnesses.  Husband asserted that it would be "unfair and prejudicial" to him if she were allowed to present any evidence.  Wife conceded that she had not fully responded to discovery and that she did not timely file her list of witnesses and exhibits.  She requested a continuance, to which

husband objected, so that she could "cure the [discovery] deficiencies and prepare the case for trial." After considering the parties' arguments, the circuit court granted husband's motion *in limine* and held that wife was "prohibited from presenting evidence, testimony, witnesses, and exhibits at the trial." The circuit court entered an order memorializing its ruling; wife endorsed the order without noting any objections.

On March 26 and 27, 2019, both parties and their counsel appeared before the circuit court for a trial on equitable distribution, custody, spousal support, child support, and attorney's fees. At the beginning of the trial, wife confirmed with the circuit court that she was allowed to cross-examine witnesses for impeachment purposes. Husband presented evidence from his brother and sister regarding the parties' separation, husband's separate interests in his family's partnership, and husband's relationship with the minor children. Wife did not cross-examine husband's brother or sister, except to ask a few questions regarding custody.

Husband testified about real estate, including property that he owned before the marriage and the marital residence. Husband explained that he and wife had purchased the marital residence during their marriage. Husband traced the separate funds that he had invested into the marital residence and argued that they were his separate property.

Husband's brother testified that husband has a partnership interest in a family business that manages real estate.[1] Husband receives monthly disbursements from the partnership. Stuart Rosenberg, an expert in accounting, explained husband's disbursements and opined about husband's cash flow after taxes.[2] Wife did not cross-examine husband's brother or Rosenberg.

_____

[1] The partnership was established before the parties' marriage. Husband also has an interest in real estate that he inherited from his parents.

[2] Wife stipulated that Rosenberg was an expert in accounting.

Husband also testified about the parties' bank accounts, retirement accounts, and vehicles. Husband requested that each party keep their own accounts and vehicles.

Husband stated that wife had worked during their marriage but quit her job after the parties' separation. Husband objected to wife's resignation because she had provided health insurance and income to support the children. Husband submitted as exhibits copies of wife's resume, her employment records, her salary history, and her educational diplomas and certificates.

Wife cross-examined husband about incidents during the marriage and custody matters, but not about equitable distribution or support issues. During her cross-examination, husband objected and argued that wife had exceeded the direct examination, but the circuit court stated that it was giving her "a little leeway" because it was cross-examination.

At the conclusion of husband's evidence, wife questioned the circuit court as to whether she could present any evidence and whether she could testify. The circuit court reviewed the order granting the motion *in limine* and confirmed that wife was precluded from testifying or presenting any evidence. Wife's counsel acknowledged that because of the pretrial order, his "hands were tied," but wife wanted to raise "some serious issues." Wife did not proffer what those "serious issues" were.

The parties informed the circuit court that they had agreed to "dispense with closing arguments" and simply would argue the proposed distribution. Husband also announced that they had agreed to the division of the banking and investment accounts, personal property, certain debts, and husband's separate property. Husband also stated that they had agreed to share equally the tuition for the children's school. After husband explained their agreement, wife stated that she no longer agreed "to a couple of things." Wife conferred with her attorney and, then, stated that she agreed to the division of personal property only.

- 4 -

Husband submitted his proposed findings for equitable distribution and requested primary physical custody of the children. Husband noted that wife could have cross-examined witnesses, but chose not to do so. Most of husband's evidence was unrebutted. Husband asked the circuit court to adopt Rosenberg's opinion regarding his income and impute income to wife based on her salary before she quit her job. Husband also asked for a deviation from child support for the children's private school tuition. The circuit court agreed to bifurcate husband's request for attorney's fees.

During her arguments, wife reminded the circuit court that she had been limited as to what evidence she could present. Aside from questioning the source of funds for renovating the house, wife made no arguments regarding equitable distribution or support and did not offer any proposed findings; instead, she "skip[ped] . . . to the most pressing issue," which was custody of the children. She argued that it was in the best interests of the children for her to have primary physical custody.

After hearing the evidence and arguments, the circuit court granted the divorce to husband. It reviewed the equitable distribution factors from Code § 20-107.3 and found that husband had traced his separate property from the marital residence. It accepted husband's proposal that each party would retain his or her banking, investment, and retirement accounts, which the circuit court found to be a "major concession" on husband's part. The circuit court also found that husband proved that he owned separate interests in his family's partnerships and inherited property. The circuit court accepted husband's evidence regarding his income. It also agreed that it was proper to impute income to wife based on her earnings from her previous employment. The circuit court next reviewed the custody factors of Code § 20-124.3 and ordered that joint legal custody, with primary physical custody to father, was in the best interests of the children. The circuit court declined to order spousal support "based upon the imputation of income." The circuit court found that neither parent was required to contribute to the children's private school tuition.

Wife noted her objections to the custody ruling, the imputation of income, and the denial of spousal support. The circuit court reminded wife that she could note her objections on the final order.

Once the circuit court had ruled on the equitable distribution, custody, and support issues, husband argued for an award of attorney's fees equivalent to half of what he had incurred. Wife argued that each party be responsible for his or her own attorney's fees. The circuit court ultimately agreed with husband and awarded him one-half of his attorney's fees.

On April 26, 2019, the parties appeared before the circuit court for entry of the final order of divorce. Wife had retained new counsel, who requested a continuance and noted wife's objections to the final order. Husband objected to the continuance. The circuit court denied the continuance, entered the final order of divorce, and allowed counsel to note objections on the final order and file post-trial motions.[3]

Wife timely filed a motion to reconsider the final order of divorce, the circuit court entered an order suspending the finality of the final order of divorce, and husband filed a response opposing wife's motion. After reviewing the pleadings, the circuit court denied wife's motion to reconsider and reinstated the final order of divorce. This appeal followed.

ANALYSIS

"We begin our analysis by recognizing the well-established principle that all trial court rulings come to an appellate court with a presumption of correctness." Niblett v. Niblett, 65 Va. App. 616, 623 (2015) (quoting Stiles v. Stiles, 48 Va. App. 449, 453 (2006)). "[T]he party who asserts the contrary is required to overcome the presumption by record proof." Hart v. Hart, 27 Va. App. 46, 70 (1998) (quoting Broom v. Broom, 15 Va. App. 497, 504 (1992)).

---

[3] At the parties' request, the circuit court granted a reservation of spousal support for each party for seven and a half years.

Wife argues that the circuit court erred in granting the motion *in limine* and preventing her from presenting evidence or witnesses at trial.[4] She asserts that the order was "overly broad" and that husband would not have been prejudiced or surprised if she had testified.

"Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" Reaves v. Tucker, 67 Va. App. 719, 736 (2017) (quoting Michels v. Commonwealth, 47 Va. App. 461, 465 (2006)). "To be effective, pretrial deadlines in Rule 1:18 scheduling orders must be enforced by Virginia trial courts." Rahnema v. Rahnema, 47 Va. App. 645, 658 (2006). "There is little point in issuing such orders if they amount to nothing more than a juristic bluff – obeyed faithfully by conscientious litigants, but ignored at will by those willing to run the risk of unpredictable enforcement." Id. "The impartial, consistent enforcement of scheduling orders provides systemic benefits to litigants and trial courts alike." Id.

The circuit court granted the motion *in limine* due to wife's failure to comply with the scheduling order. Wife admitted to the circuit court that she did not fully respond to the discovery propounded to her and had not timely filed her list of witnesses and exhibits. On appeal, wife acknowledges the following provision in the scheduling order:

> Any exhibit or witness not so identified and filed will not be received in evidence, except in rebuttal or for impeachment or unless the admission of such exhibit or testimony of the witness would cause no surprise or prejudice to the opposing party and the failure to list the exhibit or witness was through inadvertence.

Focusing on the purported lack of surprise, wife argues that she should have been permitted to testify. Wife, however, fails to address the second requirement of the exception stating that "the

---

[4] Wife did not appeal the custody award, so we will not consider the effect of the circuit court's ruling on the motion *in limine* with respect to the custody award.

failure to list the exhibit or witness was through inadvertence." Wife admitted that she had not complied with the order. The record does not reflect that wife's failure to notify husband of her witnesses and exhibits until the night before the hearing on the motion *in limine* was inadvertent.

Furthermore, wife did not proffer what her excluded evidence or testimony would have been.[5] "In Virginia, when 'testimony is rejected before it is delivered, an appellate court has no basis for adjudication unless the record reflects a proper proffer.'" Ray v. Commonwealth, 55 Va. App. 647, 649 (2010) (quoting Whittaker v. Commonwealth, 217 Va. 966, 968 (1977)); see also Klein v. Klein, 11 Va. App. 155, 160 (1990) ("When evidence is excluded by the court, the aggrieved party must make a proper proffer of the excluded testimony to preserve the ruling for appellate review."). "When an appellant claims a trial court abused its discretion in excluding evidence, we cannot competently determine error – much less reversible error – without a proper showing of what that testimony would have been." Ray, 55 Va. App. at 649 (quoting Tynes v. Commonwealth, 49 Va. App. 17, 21 (2006)). "For a proffer to be sufficient, it must allow us to examine both the 'admissibility of the proposed testimony,' and whether, even if admissible, its exclusion 'prejudiced' the proffering party." Massey v. Commonwealth, 67 Va. App. 108, 132 (2016) (quoting Molina v. Commonwealth, 47 Va. App. 338, 368 (2006)). "We can determine prejudice only upon 'proper proffer showing what the testimony would have been.'" Id. at 133 (quoting Holles v. Sunrise Terrace, Inc., 257 Va. 131, 135 (1999)). The record does not contain any proffers from wife.[6] "Absent such [proffer], the ruling will not be considered on appeal." Klein, 11 Va. App. at 160.

---

[5] For the first time, wife included in her opening brief on appeal a "proffer of evidence not presented" at trial, but wife's attempt to proffer evidence in her appellate brief is not timely and will not be considered. See Creamer v. Commonwealth, 64 Va. App. 185 (2015).

[6] Wife argues in her reply brief that a proffer was not necessary because her counterclaim contained "numerous specific allegations about which she could have offered testimony which would have been a basis, if accepted by the trial court, to award a different custody

Lastly, we note that the circuit court provided wife with an opportunity to cross-examine husband's witnesses. For example, after Rosenberg testified about husband's income, the circuit court asked wife if she wished to cross-examine him and she responded, "No questions." Wife cross-examined husband, his brother, and his sister regarding custody issues, but she did not cross-examine husband or his witnesses about equitable distribution or financial issues. Wife also did not object to husband's exhibits.[7]

Accordingly, the circuit court did not err in granting the motion *in limine*.

### *Marital Residence*

Wife argues that the circuit court erred in finding that husband had traced his separate property interest from the marital residence. She contends that he did not provide sufficient evidence to prove that the funds from the sale of real estate that he owned before the marriage were invested into the marital residence.

Because "the trial court's classification of property is a finding of fact, that classification will not be reversed on appeal unless it is plainly wrong or without evidence to support it." David v. David, 64 Va. App. 216, 221 (2015) (quoting Ranney v. Ranney, 45 Va. App. 17, 31-32 (2005)). Separate property is "all property, real and personal, acquired by either party before the marriage." Code § 20-107.3(A)(1)(i). Husband testified that before the marriage, he had invested approximately $80,000 to purchase real estate in Cabin John, Maryland (the Cabin John property). Therefore, the Cabin John property was presumably separate property.

---

arrangement." Wife, however, did not assign error to the circuit court's child custody award, so we cannot review it on appeal. Wife further alleges that she proffered evidence in her motion to reconsider regarding custody and her former employment. The circuit court considered the motion to reconsider, held a hearing on the motion, and denied the motion. Wife does not challenge the circuit court's denial of her motion to reconsider.

[7] Husband submitted into evidence twenty-five documentary exhibits concerning equitable distribution, support, imputation of income, and custody.

The marital residence was acquired in both parties' names during the marriage and presumed to be marital property. Code § 20-107.3(A)(2). The equitable distribution statute, however, allows for hybrid property, or property that is part-marital and part-separate. Code § 20-107.3(A)(3).

> When marital property and separate property are commingled by contributing one category of property to another, resulting in the loss of identity of the contributed property, the classification of the contributed property shall be transmuted to the category of property receiving the contribution. However, to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, such contributed property shall retain its original classification.

Code § 20-107.3(A)(3)(d). Since husband claimed that a portion of the marital residence was his separate property, he had the burden of tracing his separate property. Id.; see also Ranney, 45 Va. App. at 34-35. "In order to trace the separate portion of hybrid property, a party must prove that the claimed separate portion is identifiably derived from a separate asset." Rahbaran v. Rahbaran, 26 Va. App. 195, 208 (1997).

Husband testified that the sale of the Cabin John property was not completed when he and wife purchased the marital residence, so his family's partnership gave him a bridge loan to purchase the marital residence. Once the sale of the Cabin John property had closed, husband used the proceeds to pay toward the bridge loan. Husband's brother also testified about the bridge loan from the family's partnership and that husband paid back most of the loan four months later. Husband produced documents reflecting the purchase of the Cabin John property and the marital residence, as well as the bridge loan. Husband requested that $80,000 from the sale of the Cabin John property be classified as his separate property. Wife did not cross-examine husband or his brother regarding the Cabin John property and the marital residence.

Here, the circuit court found that husband traced his separate interest from the Cabin John property into the purchase of the marital residence. Contrary to wife's arguments, the evidence supports the circuit court's findings.

*Imputing income to wife*

Wife argues that the circuit court erred by imputing income to her. She asserts that she was unemployed and that the income imputed to her was not "recent past earnings," but the amount she had earned "three to four years before the trial."

"The court's paramount concern when awarding child support is the best interest of the children." Niblett, 65 Va. App. at 624 (quoting Stiles, 48 Va. App. at 456). "The determination of child support is a matter of discretion for the circuit court, and therefore we will not disturb its judgment on appeal unless plainly wrong or unsupported by the evidence." Id. (quoting Oley v. Branch, 63 Va. App. 681, 699 (2014)).

Husband testified that wife had worked during their marriage but voluntarily left her employment after the parties' separation.[8] Husband objected to her quitting her job because she had provided health insurance and income to support the children. Husband submitted documentation from wife's employer showing that when she resigned, her annual salary was $127,300. Husband also submitted exhibits showing that wife had earned a master's degree in financial management from Johns Hopkins University. After she resigned, wife told husband that she intended to earn a real estate license and become a realtor. Although she obtained her real estate license, she never pursued it as a career; at the time of final hearing, she sold retail online. Wife did not object to the

---

[8] Wife's employment history with her former employment varied from full-time to part-time. She worked part-time for thirty to thirty-nine hours per week from October 6, 2014 until October 31, 2016, when her employment changed to "part-time on call." Husband testified that wife quit her job in 2016, presumably when her employment changed from part-time to part-time on call. Wife submitted her resignation letter to her employer on July 16, 2018, and listed her last day of employment as July 27, 2018.

admission of documents relating to her employment or education and did not cross-examine husband about her employment.

Husband argued that the holding in Antonelli v. Antonelli, 242 Va. 152 (1991), regarding a parent's income for child support calculations, applied because as in Antonelli, wife voluntarily chose to leave her job with a good income to pursue other endeavors. "[T]he risk of [her] success at [her] new job was upon [wife], and not upon the children." Id. at 156. Husband asserted that she could not "quit [her] job[] and then say I don't have money to support my children." He asked the circuit court to impute income to wife based on her most recent salary of $127,300. The circuit court agreed with husband's argument and found that "this has Antonelli written all over it in terms of imputation of income." The circuit court imputed $127,300 to wife as her annual income.

Continuing to apply the holding in Antonelli, this Court has held that "[f]ollowing a divorce, a parent may not voluntarily pursue low paying employment 'to the detriment of support obligations to the children.'" Niblett, 65 Va. App. at 627 (quoting Niemiec v. Dep't of Soc. Servs., Div. of Child Support Enf't ex rel. Niemiec, 27 Va. App. 446, 451 (1998)). "Imputed income may be calculated from evidence showing a higher-paying former job voluntarily quit by the parent, from evidence showing that more lucrative work is currently available to the parent, or from evidence showing recent past earnings." Id. at 628. "The recent past earnings of a voluntarily unemployed parent often provides the most reasonable estimate of earning capacity." Id. at 628-29. "[R]ecent past earnings were evidence of what [wife] likely would have earned had [s]he not become voluntarily unemployed." Id. at 634.

Here, husband presented evidence that wife last earned $127,300 at her job, which she voluntarily chose to leave even though husband objected.[9] Contrary to wife's arguments, this

---

[9] Documentation from her employer proved that wife's salary was $127,300 from December 29, 2014 through July 2018.

- 12 -

figure was an accurate representation of what she could have been earning had she not chosen to resign. Accordingly, the circuit court did not err in imputing an annual income of $127,300 to wife.

*Husband's income*

Wife argues that the circuit court erred in calculating husband's income for child support purposes. She contends that husband's gross income was greater than what Rosenberg opined.

"The issue of husband's income is a question of fact, and 'the judgment of the [circuit] court on questions of fact is entitled to great weight and will not be disturbed unless it is plainly wrong or without evidence to support it.'" Patel v. Patel, 61 Va. App. 714, 727 (2013) (quoting Smith v. Bd. of Supervisors of Franklin Cty., 201 Va. 87, 91 (1959)).

Husband's brother testified that husband received monthly disbursements for his interests in his family's partnerships. The taxes owed on the partnerships were paid by the partnerships. Husband did not manage the partnership interests and had no control over the amounts disbursed. Wife did not ask husband's brother any questions regarding husband's income.

Husband also introduced into evidence copies of his 2015, 2016, and 2017 tax returns, which showed his distributions from his family's partnerships. Rosenberg, husband's expert witness, reviewed husband's tax returns and offered his opinion regarding husband's total annual distributions and annual cash flow, net of taxes. Rosenberg prepared a report to explain his analysis, and the report was admitted into evidence without objection. Wife did not cross-examine Rosenberg.

At the conclusion of all of the evidence and argument, the circuit court found that there was "ample testimony" from husband's brother and Rosenberg about husband's income. The circuit court accepted their testimony and Rosenberg's expert opinion stating husband's income. "It is well established that the trier of fact ascertains a witness' credibility, determines the weight

- 13 -

to be given to their testimony, and has discretion to accept or reject any of the witness'

testimony." Layman v. Layman, 62 Va. App. 134, 137 (2013) (quoting Street v. Street, 25

Va. App. 380, 387 (1997) (*en banc*)); see also Patel, 61 Va. App. at 728.

Considering the totality of the record, the circuit court did not err in calculating

husband's income based on Rosenberg's opinion.

*Circuit court's award of attorney's fees*

Wife argues that the circuit court abused its discretion by awarding $30,360 to husband

for his attorney's fees. She emphasizes the economic disparity between her and husband.

"[A]n award of attorney's fees is a matter submitted to the trial court's sound discretion

and is reviewable on appeal only for an abuse of discretion." Allen v. Allen, 66 Va. App. 586,

601 (2016) (quoting Richardson v. Richardson, 30 Va. App. 341, 351 (1999)). "An abuse of

discretion occurs 'only "when reasonable jurists could not differ"' as to the proper decision." Id.

(quoting Brandau v. Brandau, 52 Va. App. 632, 641 (2008)). "[A]fter considering 'the

circumstances of the parties' and 'the equities of the entire case,' a trial court may exercise its

discretion and issue an award of attorney's fees and costs that is reasonable 'under all of the

circumstances revealed by the record.'" Id. at 601-02 (quoting Mayer v. Corso-Mayer, 62

Va. App. 713, 734 (2014)).

Husband presented his attorney's fees affidavit without objection by wife. Husband had

incurred a total of $60,720 in attorney's fees and requested that wife be obligated to pay half of

his fees. Wife failed to comply with the scheduling order, which forced husband to file a motion

*in limine* and appear at a pre-trial hearing. Husband had sought stipulations from wife to no

- 14 -

avail.[10] Husband also had attempted to settle the matter as recently as the weekend before the final hearing without success.[11]

The circuit court found that "much of the cost of this litigation was a result of what [wife] failed to do." The circuit court even noted that during the trial, "things that were seemingly agreed were then no longer agreed to." Considering the totality of the circumstances, the circuit court did not abuse its discretion in awarding husband one-half of his attorney's fees, or $30,360.

*Appellate attorney's fees and costs*

Both parties ask this Court to award them attorney's fees and costs incurred on appeal. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695 (1996). "The decision of whether to award attorney's fees and costs incurred on appeal is discretionary." Friedman v. Smith, 68 Va. App. 529, 545 (2018). Having reviewed and considered the entire record in this case, we deny wife's request and grant husband's request for a reasonable amount of attorney's fees and costs incurred on appeal. We remand this case to the circuit court for determination and award of the appropriate appellate attorney's fees and costs, which also should include any additional attorney's fees incurred at the remand hearing. Rule 5A:30(b).

## CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed. We remand this case to the circuit court for determination and award of the appropriate appellate attorney's fees, which also should include any additional attorney's fees incurred at the remand hearing.

Affirmed and remanded.

---

[10] The parties agreed that the financial documents provided in discovery and documents from wife's former employer were authentic and kept in the ordinary course of business, but wife would not agree to the values of the parties' assets and liabilities.

[11] Husband's settlement offer would have awarded more money to wife than what the circuit court awarded her. The circuit court found husband's settlement offer to be "very significant."